# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Madeleine L. DeClercq, by her
next friend, Lorri Ann Lair,

            Plaintiff,

v.

JPMorgan Chase Bank, N.A.;
American Diabetes Association,

            Defendants.

_____/

Case No. 14-cv-12817
Hon. Judith E. Levy
Mag. Judge David R. Grand

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [17]

This is a RICO case. Pending is defendants JPMorgan Chase Bank, N.A. ("Chase") and the American Diabetes Association's ("ADA") motion to dismiss. (Dkt. 17.)

I. Background

Joan Bookmyer, plaintiff's cousin, established a trust on September 29, 1992. Ms. Bookmyer died on June 13, 2013. She had one daughter, Constance Bookmyer, who died on January 4, 2012.[1]

The portion of the trust governing the dispensation of its assets states:

> 10.4 <u>Amount transferred to RESIDUARY TRUST.</u> If Grantor's daughter, CONSTANCE J. BOOKMYER, or any issue of Grantor shall survive the Grantor, then as soon after the death of the Grantor as the Trustee determines to be practicable, the Trustee shall allocate to the RESIDUARY TRUST the remaining body and corpus of the trust property to be held, administered and disposed of in accordance with the provisions of ARTICLE XI herein.
>
> 10.5 If Grantor is not survived by her daughter, CONSTANCE J. BOOKMYER, or any other issue, then upon the death of Grantor, the remaining body and corpus of the trust property shall be transferred and paid over to the AMERICAN DIABETES ASSOCIATION-MICHIGAN AFFILIATE in termination of this trust.

---

[1] Although plaintiff does not include a copy of the trust in her complaint, the Court may consider documents either referenced in the plaintiff's complaint or central to plaintiff's claims in a motion to dismiss without converting the motion into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). All of plaintiff's claims are based on alleged rights deriving from the trust, making it undeniably central to her claims.

Article XI sets out the provisions relating to the Residuary Trust. It states:

> 11.0 All property allocated to the Trustee of the RESIDUARY TRUST shall be held and administered as follows.
>
> 11.1 <u>Payment of income and principal to children.</u>  If Grantor's daughter, CONSTANCE J. BOOKMYER, shall survive Grantor, the Trustee shall pay to CONSTANCE J. BOOKMYER the entire net income from the trust estate, in reasonable installments, during the continuance of the trust. [….]
>
> 11.2 <u>Termination of trust for issue.</u>
> (a) Grantor's daughter, CONSTANCE J. BOOKMYER, shall have the right to withdraw any amount or portion up to the entire rest, residue and remainder thereof at any time after Grantor's death, free and discharged from the trusts hereof.  [….]
>
> (b) If Grantor's daughter, CONSTANCE J. BOOKMYER, shall die leaving issue surviving Grantor, then, under such circumstances, all of the rest, residue and remainder of the trust property and estate shall be assigned, transferred, conveyed, and paid over to such child's issue by right of representation.
>
> (c) If Grantor's daughter, CONSTANCE J. BOOKMYER, shall die leaving no issue surviving, then, under such circumstances, all of the property and estate embraced within the trust so held for such deceased child of Grantor shall be distributed and paid over to the

AMERICAN DIABETES ASSOCIATION-MICHIGAN AFFILIATE in termination of this trust.

After Joan Bookmyer's death, plaintiff's father, Donald DeClercq, filed a will dated January 16, 2012, purporting to revoke the trust. The ADA contested the purported will in Michigan probate court. The parties eventually settled in 2014, and the trust was not revoked. Instead, the trust distributed its $5 million balance to the ADA, through the successor trustee, Chase.

Plaintiff now sues, bringing eight counts against defendants. She alleges that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 15 U.S.C. § 1962(c) & (d), claims statutory and common-law conversion against each defendant and breach of fiduciary duty against Chase, and seeks a declaratory judgment that would replace the word "issue" with "family" in the trust, and declare plaintiff the last surviving member of Joan Bookmyer's family.

II.   Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

III.   Analysis

The threshold issue in this case is whether plaintiff is a beneficiary under the language of the trust. If she is not, then she has no standing to bring any claim in her suit.

Plaintiff argues that because sections 10.4 and 10.5 of the trust use conflicting language to refer to "issue," the Court should determine that the ambiguity makes her an intended beneficiary of the trust.

Section 10.4 states that, should Constance Bookmyer or "any issue of Grantor" survive Joan Bookmyer, then the Trustee will allocate to the Residuary Trust the body and corpus of the trust to be used by such issue in accordance with Article XI of the trust. Section 10.5 states that if neither Constance nor "any other issue" survives Joan Bookmyer, the

body and corpus of the trust will be transferred and paid over to the ADA.

At the time Joan Bookmyer established the trust, Michigan trusts were governed by the Revised Probate Code ("RPC"). However, effective April 1, 2000, the Estates and Protected Individuals Code ("EPIC") replaced the RPC. Under EPIC, "issue" is defined as "an individual's descendant." M.C.L. § 700.1105(d). "Descendant" means, in relation to an individual, all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this act. M.C.L. § 700.1104(k).

Plaintiff argues that the phrase "issue of Grantor" refers to Joan Bookmyer's lineal descendants under EPIC, but "any other issue" refers to some group of descendants more expansive than lineal descendants, which includes her as a collateral descendant. The Court is not persuaded by this argument.

"The role of the . . . court is to ascertain and give effect to the intent of the testator as derived from the language of the [trust]." *In re Woodworth Trust*, 196 Mich. App. 326, 327 (1992) (citing *In re Norwood*

*Estate*, 178 Mich. App. 345, 347 (1989); *In re Burruss Estate*, 152 Mich. App. 660, 663 (1986).) "Where there is no ambiguity [in the language of a trust], that intention is to be gleaned from the four corners of the instrument." *Woodworth Trust*, 196 Mich. App. at 327.

Section 10.4 unambiguously states Joan Bookmyer's intent for the assets of the trust to pass on to her daughter or Joan Bookmyer's other lineal descendants, such as children or grandchildren. For plaintiff's argument to have credence, the Court would have to create ambiguity in Section 10.4 by virtue of Section 10.5's operation. Despite a clear command that the assets of the trust go only to lineal descendants if any exist, plaintiff would have the Court read Section 10.5 to state that 10.4 actually meant for the assets of the trust to go to any descendant who survived Joan Bookmyer, even if the descendant is collateral and therefore "not strictly a descendant." Black's Law Dictionary, 9th ed. 2009. Plaintiff's reading of Section 10.5 would thus require the Court to determine that the unambiguous language of Section 10.4 meant something other than what it means, which the Court will not do.

The Court's interpretation is further bolstered by EPIC and Article XI. EPIC defines "descendant" as "all of [an individual's]

7

descendants of all generations." M.C.L. § 700.1104(k). However, the definition of descendant speaks expressly in terms of "the relationship of *parent and child* at each generation," Id. (emphasis added), and defines both parent and child in the act to comport with the concept of lineal descendants. *See* M.C.L. § 700.1104(f) (defining "child"); M.C.L. § 700.1106(i) (defining "parent").

Section 11.2(b) of the trust determines what happens if Constance Bookmyer died and left "issue surviving Grantor": the trust assets are assigned to such issue by right of representation. The phrase "issue surviving Grantor" parallels "issue of Grantor," which unambiguously means lineal descendants. Section 11.2(c), using the same phrasing determines what happens if Constance Bookmyer left "no issue surviving": the trust assets are to be distributed and paid over to the ADA. Unlike Sections 10.4 and 10.5, there is no difference in phraseology giving rise to any ambiguity; Sections 11.2(b) and (c) together unambiguously state that should Joan Bookmyer leave no lineal descendants, the trust's assets are to go to the ADA.

Plaintiff is not a beneficiary of the trust. Accordingly, plaintiff cannot argue invasion of a legally protected interest, and has no

8

standing to bring any claim against defendants in relation the distribution of the trust assets. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[2]

IV. Conclusion

For the reasons stated above, it is hereby ordered that:

Defendants' motion to dismiss (Dkt. 17) is GRANTED; and

Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.


Dated: October 29, 2014          s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                                                  United States District Judge

---

[2] Plaintiff argues, confusingly, that the Court may not determine whether she has standing to pursue her claims at the motion to dismiss stage, because it requires determining whether she has a legally enforceable right under the trust. That determination, according to plaintiff, is a question on the merits that may only be addressed after discovery. The Court disagrees. All of plaintiff's claims derive from her ability to assert claims as a purported beneficiary of the trust, which is in turn determined by the plain language of the trust unless that language is ambiguous. If the Court can determine at the motion to dismiss stage that plaintiff is not a beneficiary, it need not reach the merits of any claim deriving from an injury she could not have suffered.

9

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2014.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
